FIRST NATIONAL BANK OF DES PLAINES, Trustee, *et al.*, Plaintiffs-Appellants, *v.* AMCO ENGINEERING COMPANY *et al.*, Defendants-Appellees.— (AMCO ENGINEERING COMPANY, Third-Party Plaintiff, *v.* HOWARD JACKSON, d/b/a JACKSON TREE SERVICE, Third-Party Defendant.)

(No. 74-14;

Second District (2nd Division)—October 7, 1975.

Ralph E. Brown, of Walsh, Case & Coale, of Chicago, for appellants.

McKenna, Storer, Rowe, White & Haskell, of Chicago, and Paul S. Chervin, of Waukegan, for appellees.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

This is an action to recover damages caused by the cutting and removal of a number of trees that had been growing on plaintiffs' property. At the close of plaintiffs' case-in-chief, the trial court, sitting without a jury, directed verdicts in favor of both defendants on the grounds that plaintiffs had failed, by the proper measure of damages, to prove any injury.

On review, plaintiffs assert that the trial court did not apply the proper rule for the measure of damages, that the court erred in refusing to allow plaintiffs leave to file an amended complaint which sought punitive damages, and that their proposed amendments stated a cause of action for punitive damages.

In January of 1969, plaintiffs purchased vacant commercial property (lot 34) in an industrial subdivision. Growing on the lot were approxi-

mately 35 to 40 trees, the majority oak. The tree trunk diameters ranged from 4″ to 4′, the greater number measuring between 20″ and 35″. Although other lots in the subdivision were for sale, plaintiffs chose lot 34 because of the aesthetic contribution of the trees and their enhancement of the environment. It was plaintiffs' intent to build an industrial plant on the site, and to have the trees serve as a natural screen between that plant and adjacent industrial buildings.

In March of 1969, the defendant Amco procured the services of defendant Jackson to cut and remove trees located on Amco's property. For his efforts, Jackson was to receive the trees in their severed condition.

There is a conflict in the testimony as to the instructions given Jackson. Jackson stated that an officer of Amco instructed him to remove all the trees on both Amco's property and the adjacent property of the plaintiffs; that another Amco officer who overheard this conversation, protested on the grounds that Amco did not own plaintiffs' property, to which the first officer replied, "Don't worry about it, I'll get it cleared up by that time."

Amco's officer testified that Jackson was instructed to cut only those trees located on Amco's property and not to enter upon plaintiffs' property, that he gave Jackson a map delineating the boundary lines of Amco's property, and that he pointed out the boundary markers during an on-site meeting.

In April, 1969, Jackson, without making an independent inquiry as to the owner of plaintiff's property, cut and removed all the trees from both Amco's and plaintiffs' property, leaving stumps ranging in height from 2″ to 10″.

The following March, plaintiffs filed a four-count complaint against the defendants based upon the theory that the defendants' actions amounted to negligence and/or an intentional trespass to property (*trespass quare clausum fregit*). In September of 1973, plaintiffs sought to amend the complaint to include two counts for punitive damages. The court denied plaintiffs leave to amend on the grounds that the amendment failed to set forth a punitive cause and because the amendment, which was offered one week prior to trial, was untimely, not diligent, and changed the posture of the defense.

The following month, defendants moved the court to bar plaintiffs from offering testimony as to the value of the trees prior to their cutting and removal. The motion was based upon the proposition that the proper measure of damages was either the depreciation of the realty's market value caused by defendants' actions or the value of the trees in their severed condition. Defendants' motion was granted.

At trial, plaintiffs made an offer of proof to both the value of the

trees prior to their cutting and removal, and to the cost of replacement. They introduced no evidence concerning the depreciation in the value of the land as caused by the defendants' actions, nor on the value of the trees in their severed condition.

At the close of plaintiffs' case-in-chief, the trial court, on defendants' motions, directed verdicts in favor of the defendants on the grounds that the plaintiffs had failed to properly prove the damages sustained as a result of defendants' actions.

■■ The primary issue to be resolved is the proper measure of damages for the wrongful cutting and removal of trees from the realty of another. Plaintiff contends that the proper measure for the wrongful removal of ornamental and shade trees is the cost of replacing the trees, or the cost of restoring the property to a reasonable approximation of its condition prior to the trespass. The defendants maintain that the measure of damages for the destruction of trees in Illinois is the depreciation of the value of the realty caused by the cutting and removal of the trees, or the value of the trees in their severed condition.

As a general rule, the measure of damages for injury to realty is the difference between the fair market value of the property before and after the injury to the premises. (*Stirs, Inc. v. City of Chicago*, 24 Ill.App.3d 118, 122 (1974); *Schwartz v. City of Chicago*, 21 Ill.App.3d 84, 95 (1974). See also *Louisville, Evansville & St. Louis Consolidated R.R. Co. v. Spencer*, 149 Ill. 97, 103 (1894); *Chicago & Iowa R.R. Co. v. Baker*, 73 Ill. 316, 318 (1874); *Hackett v. Harmon*, 155 Ill.App. 55, 56 (1910).) The general rule has been applied to the destruction of ornamental or shade trees. *Rogers v. Enzinger*, 339 Ill.App. 376 (1950).

■■ Where the property injured, although part of the realty, has a value which can be accurately determined without reference to the freehold, the recovery may be for the property in its severed condition and not for the difference in the value of the land before and after the defendant's misconduct. *Jones v. Sanitary District*, 252 Ill. 591, 601-02 (1911); *Citizens National Bank v. Joseph Kesl & Sons Co.*, 309 Ill.App. 273, 277 (1941), *aff'd*, 378 Ill. 428 (1941); *Conklin v. Newman*, 278 Ill. 30, 36 (1917); *Miller v. Simon*, 100 Ill.App.2d 6, 13 (1968).

Other jurisdictions, in dispensing justice between the parties, allow the reasonable cost of replacing the trees or for the reasonable cost of restoring the property to approximate, as near as possible, its original condition. (See Annot., 69 A.L.R. 2d 1335, §§ 15—16 (1969).) This, it would seem, is the more equitable rule, but Illinois law has not, to date, recognized such rule.

We therefore must find that the trial court was correct in its ruling as to the proper measure of damages in the present cause.

■■■ Nevertheless, the parties have stipulated to the fact that defendant Jackson did, without permission of plaintiffs, enter upon plaintiffs' property and remove all the trees located thereon. Thus, a *prima facie* case of trespass to plaintiffs' property has been proven. (*Kimber v. Burns*, 253 Ill. 343 (1912).) Every trespass to real property is considered to result in legal injury, entitling plaintiff to at least nominal damages. (*Falejczyk v. Meo*, 31 Ill.App.2d 372, 377 (1961).) We therefore find that the trial court erred in directing a verdict in favor of the defendants due to plaintiffs' failure to prove actual damages. Plaintiffs need not prove actual damages to recover in a case of trespass to property.

■■ Concerning plaintiffs' punitive damage counts, such are not a favorite in the law. No plaintiff has a vested right to punitive damages. Such damages are assessed in the interest of society to punish the defendant and to warn him and others that his acts are offensive to society. (*Eshelman v. Rawalt*, 298 Ill. 192, 197 (1921).) Where a wrongful act is accompanied by aggravating circumstances such as wilful, wanton, malicious or oppressive conduct, punitive damages should be allowed. *Wetmore v. Ladies of Loretto, Wheaton*, 73 Ill.App.2d 454, 467 (1966).

■■ As presented in plaintiffs' case-in-chief, the actions of both defendants allow for a question of fact as to whether punitive damages could be recoverable. (See *Miller v. Simon*, 100 Ill.App.2d 6, 11 (1968).) The defendants were on notice from the filing of the original complaint that the plaintiff planned to prove that the trespass was intentional. We therefore find that the trial court erred in not allowing plaintiffs leave to file an amended complaint seeking punitive damages for the trespass. Under such circumstances, and in light of the fact that we must remand for failure to award nominal damages caused by the trespass, we find no prejudice, unfairness or surprise in allowing plaintiffs to amend the complaint and to seek punitive damages.

It is unnecessary to determine the sufficiency of plaintiffs' proposed amended complaint which was not filed due to the court's order especially since, on remand, plaintiffs may elect not to refile the same pleading.

For the reasons stated, the judgment appealed is reversed and the cause remanded for a new trial.

Reversed and remanded.

RECHENMACHER, P. J., and DIXON, J., concur.